**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| PARVEEN IDRIS, BINDER ELECTRIC SERVICE CO., and KJJ ENTERPRISE INC., individually and on behalf of all similarly situated persons and entities, and CITY OF CHICAGO EX REL. ROBERT GREEN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06 C 6085 |
| CITY OF CHICAGO, CHICAGO OFFICE OF EMERGENCY MANAGEMENT AND COMMUNICATIONS, CHICAGO DEPARTMENT OF REVENUE, CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, RICHARD M. DALEY, and REDFLEX TRAFFIC SYSTEMS, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) | Judge Robert W. Gettleman Magistrate Judge Mason |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT,
WRIT OF CERTIORARI AND OTHER RELIEF**

NOW COME Plaintiffs PARVEEN IDRIS, BINDER ELECTRIC SERVICE CO. and

KJJ ENTERPRISE INC., individually and on behalf of all similarly situated persons and

entities, and CITY OF CHICAGO ex rel. ROBERT GREEN, by counsel ROBERT A.

HOLSTEIN of HOLSTEIN LAW OFFICES, LLC, C. COREY S. BERMAN of the LAW

OFFICE OF C. COREY S. BERMAN, LTD., RICHARD E. SCHIMMEL, WILLIAM J. HARTE

of the WILLIAM J. HARTE LTD., and EDWARD L. COOPER of KIESLER & BERMAN and

complain of the Defendants CITY OF CHICAGO, CHICAGO OFFICE OF EMERGENCY

MANAGEMENT AND COMMUNICATIONS, CHICAGO DEPARTMENT OF REVENUE,

CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, RICHARD M. DALEY and REDFLEX TRAFFIC SYSTEMS, INC., a foreign corporation, as follows:

**<u>PARTIES</u>**

1.      At all times relevant herein, Plaintiffs were residents of the state of Illinois, county of Cook.

2.      At all times relevant herein, Plaintiff Robert Green was a resident and taxpayer of the City of Chicago.

3.      Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois.

4.      Defendant Chicago Office of Emergency Management and Communications is an agency of the City of Chicago and is responsible for the overall implementation and operation of the Chicago Red Light Camera Enforcement Program ("the Red Light Program").

5.      Defendant Chicago Department of Revenue is an agency of the City of Chicago and is responsible for processing all city collections concerning the Red Light Program, administering and enforcing the city tax code, management of parking meters, booting, parking ticket issuance, and residential disabled parking sign program.

6.      Defendant Chicago Department of Administrative Hearings is an agency of the City of Chicago and is responsible for conducting hearings and issuing determinations concerning matters alleged herein.

7.      Defendant Chicago Office of Emergency Management and Communications, Defendant Chicago Department of Revenue, Defendant Chicago Department of Administrative Hearings  and all agents and representatives thereof are collectively referred to herein as the "City of Chicago" or the "City".

8.      Defendant Richard M. Daley is the duly elected Mayor of the City of Chicago, responsible for enforcing the laws and ordinances of the City of Chicago.

9.      Defendant Redflex Traffic Systems, Inc. is a foreign corporation qualified to do business and doing business in the state of Illinois, county of Cook.

<u>**NATURE OF THE CASE**</u>

10.      Each of the Plaintiffs and putative class members received Red Light Violation notices pursuant to Chapter 9 of the Municipal Code of the City of Chicago entitled "Vehicles, Traffic and Rail Transportation".

11.      Each of the putative class representative Plaintiffs was not driving the vehicle at the time of the alleged Red Light Violation for which they and/or their vehicle were charged as alleged herein.

12.      The City of Chicago sends its Complaints of Red Light Violations ("Complaints") to the registered owners of the alleged offending vehicles.

13.      The Complaints issued by the City of Chicago to named Plaintiffs and class plaintiffs describe the violation as a "Red Light Violation" issued pursuant to Municipal Ordinance 9-102-020 (See Exhibit "A".)  The Complaints generally allege that the alleged

offending vehicles failed to obey the traffic-control device placed at the relevant intersection.

14.     The Complaints do not name or identify the driver of the targeted vehicle. The Complaints identify the time and place of the alleged violation and the license plate number together with the State of issuance of the plate, the fine amount of $90.00 and the payment or contest date which is 35 days subsequent to the date of the alleged violation.

15.     The Complaint does not provide that the recipient of the Complaint may request a jury trial for the alleged charges.

16.     The Complaints received by the registered owner of the vehicle also contain photographs of the vehicle appearing to violate a red light within the City of Chicago and/or the State of Illinois.

17.     The Complaint is issued by mail.

18.     Subsequent to the payment date, if no payment is received or hearing requested by the licensee of the ticket, the registered owner of the vehicle receives a Notice of Determination from the City.  The Notice of Determination declares that there has been a "determination of liability" but it does not state against whom the liability has been determined or what the violation was other than "red light violation".  (See Exhibit "B".)

19.     In the event the registered owner of the vehicle who received the notice of the Red Light Violation does not pay the $90.00 fine, or unsuccessfully contests the alleged Violation, the determination of liability automatically results in a "Judgment" against the

4

registered owner, regardless of whether the registered owner was the operator of the vehicle that allegedly violated the red traffic light signal. (See Exhibit "C".)

20. After Judgment is entered, a law firm retained by the City of Chicago sends out a "Notice of Judgment" to the registered owner that describes the "Citation" or Complaint number, the "Tag Number" (which is unexplained), the "make" which is filled in as "othr", the offense date and place of offense, giving the address of the alleged violation, the amount of fine ($90.00) and the description "Red Light Violation". (See Exhibit "D").

21. In the notice sent by the City's law firm to registered owners of the alleged offending vehicles, the violation, judgment and fine is described as a "Parking Citation" and advises registered owners that they have been "found . . . liable for one or more parking ordinance violations."

22. The City publicizes the Red Light Program by writing that "as the registered owner of the vehicle, one has a legal responsibility for all parking finds and non-moving v i o l a t i o n s   a s s i g n e d   t o   y o u r   v e h i c l e . " ( h t t p : / / e g o v . c i t y o f c h i c a g o . o r g / c i t y / w e b p o r t a l / p o r t a l ContentItemAction.do?BV_SessionID=@@@@1869085584.1159194970@@@@&BV_Engin eID=ccccaddilkjhllkcefecelldffhdfgm.0&contentOID=536909834&contenTypeName=CO C_EDITORIAL&topChannelName=Dept&blockName=Emergency+Communications% 2FRed-Light+Camera+Enforcement%2FI+Want+To&context=dept&channelId=0&prog

ramId=0&entityName=Emergency+Communications&deptMainCategoryOID=-536893
734). (Exhibit "E").

23.     The City does not admit that the Red Light Program governs only moving violations.

24.     Because of the statutory and ordinance conflicts set forth below and because of the constitutional violations set forth below, the City did not have jurisdiction prior to May 22, 2006 and does not have jurisdiction after May 22, 2006 to prosecute the alleged violations as set forth in Chapter 9-102 of the Chicago Municipal Code.

**<u>PARVEEN IDRIS</u>**

25.     Plaintiff Parveen Idris of 314 Meadowlark Road, Bloomingdale, Illinois, was notified of an alleged "Red Light Violation" by way of a Complaint dated 02/04/06 for an alleged violation having occurred at 3400 W. Peterson Avenue on 1/06/06 at 12:45. (Exhibit "A"). The vehicle was not described in the notice; the time of day (whether P.M. or A.M.) was not stated; and the alleged wrongful conduct was not described. Most importantly, the driver of the vehicle was not named or charged in the violation. The "Red Light Violation" stated that the "payment or contest date" was 2/18/06.

26.     At all times relevant thereto, Plaintiff Idris was outside of the United States of America, having departed O'Hare Airport on December 23, 2005 on Turkish Airlines, returning to O'Hare Airport on January 20, 2006.

27.     Upon her return, Idris found the notice and wrote a letter to the Chicago Department of Revenue contesting the legality of the "Red Light Violation" as to her and

the parking violation in general, explaining that it was impossible for her to have had a "moving" violation of having failed to obey a red light since she could not have been driving her vehicle at the time; and the Citation was wrongly characterized as a parking violation. However, in order to avoid late fees, to avoid further prosecution and to avoid further collection efforts by the City, Plaintiff Idris also sent a payment together with the letter of protest. The payment was in the amount of $90.00 by credit card.

28.     Thereafter, Plaintiff Idris received a letter dated 3/29/06 from the Chicago Department of Administrative Hearings denying her protest and demanding payment of additional $90.00 (See Exhibit "F".) Upon receipt of Exhibit "F", Plaintiff Idris sent another letter of protest. Thereafter, another notice of "payment is due immediately" was received by Plaintiff. (See Exhibit "C".)

29.     Immediately, Plaintiff Idris sent another letter (Exhibit "G") stating that she was enclosing $90.00 for the second time.

### BINDER ELECTRIC SERVICE CO.

30.     Plaintiff Binder Electric Service Co. (hereinafter "Binder") is located at 5028 Estes Avenue, Skokie, Illinois.

31.     On or about May 20, 2006, Binder received a notice of judgment from City of Chicago attorneys alleging a judgment against it for a parking violation, referencing citation number 7000238228, on 6/24/05 at 2400 West Peterson in the amount of $90.00 described as "Red Light Violation". Also described was a "Tag No. 1824YGB". Binder has not paid the parking violation described. (See Exhibit "D").

32.     At no time was an authorized agent of Binder or its sole owner Irving Binder driving the vehicle described in Exhibit "D", nor is Irving Binder aware of the identity of the driver.

## KJJ ENTERPRISE INC.

33.     Plaintiff KJJ Enterprise Inc. is located at 105 Hamilton Avenue, Bensenville, IL 60106.

34.     On or about June 17, 2006, KJJ received a Complaint from the City (Ticket Number 7000454357/Notice No. 5056549490) (Exhibit "H") alleging a "Red Light Violation". Also described was Plate/State/Type/Vehicle Make 6209198 IL. KJJ paid the parking violation described in order to avoid late fees, prosecution by the City of Chicago and further collection efforts by the City or its agents.

## THE RED LIGHT CONTRACT

35.     On or about October 17, 2003, the City entered into an Agreement with Defendant Redflex Traffic Systems, Inc. for, among other things, the purchase, installation, maintenance and monitoring of red light camera systems throughout the City.

36.     The Agreement for the Digital Automated Red Light Enforcement Program, included payment for additional services provided to the City by Redflex, including the collection, review, weeding out and tendering of evidence to be subsequently used by the City in its Red Light Enforcement Program.

8

37.     The Agreement has been extended and modified from time to time by the City and Redflex.  The extensions and modifications did not substantially alter the provisions of the original Agreement as those provisions are relevant to this lawsuit.

38.     Among other things, the Agreement provides that the City paid and is to pay Redflex on a contingency basis based on Redflex' ability to provide the City with certain amounts of evidence that the City can use in its prosecution of alleged red light violations.

39.     With respect to Redflex' compensation for its services, the Agreement provides, in pertinent part, as follows:

### ARTICLE 7

### VENDOR COMPENSATION

**7.1     Basis of Payment**

The City will pay Vendor according to the Schedule of Compensation contained in attached Exhibit 2.[1]

* * *

---

[1]  Exhibit 2 to the Agreement provides, in pertinent part, as follows:

Vendor will invoice the City in the amount of $85,000 for each System that the City accepts.  The $85,000 amount for each System includes Vendor's compensation for the System and all Redflex Program services and work provided to the City, including Vendor's:

* * *

(c)     for 12 months following System Acceptance of that System: System operation services, Digital Image Verification services . . .; and reporting services; and

(d)     storage of digital image and related data for 2 years from the date such digital image and data were produced.

9

### 7.4    Reduction of Compensation

(b)    For each System that is not operational (in accordance with the terms of this Agreement) 95 percent of any consecutive 30-day period, the City will suffer harm that is difficult or impossible to calculate, including loss of revenue relating to Red Light Violations for which citations were not issued. To help defray these losses, Vendor will pay the City for each System that is operational less than 95 percent of any consecutive 30-day period, as liquidated damages, and not as a penalty, $250 multiplied by the difference between 95 percent and the percentage that the System was operational during that 30-day period, but not more than $1,250 per System per 30-day period.

(c)    For purposes of this Section 7.4(c), "Program-wide Enforceability Percentage" means the number of Enforceable Images from all Systems during any consecutive 30-day period divided by the aggregate number of Red Light Violations from all Systems during that consecutive 30-day period, multiplied by 100. For purposes of this Section 7.4(c), "System Enforceability Percentage" means the number of Enforceable Images[2] from a System during any consecutive 30-day period divided by the number of Red Light Violations from that System during that consecutive 30-day period, multiplied by 100. **If the Program-wide Enforceability Percentage is less than 85, then the City will suffer harm that is difficult or impossible to calculate, including loss of revenue relating to Red Light Violations for which citations were not issued**. To help defray these losses, Vendor will pay the City as liquidated damages, and not as a penalty, for each consecutive 30-day period in which the Program-wide Enforceability Percentage is less than 85, an amount equal to the product of $85 multiplied by (i) multiplied by (ii) where:

---

[2] Article 2.1 of the Agreement provides that the term **"'Enforceable Image' means that the photographic image** (produced by a System and submitted by Vendor to the City) of a vehicle and the vehicle registration plate of that vehicle, when the vehicle . . . is used in violation of Sections 9-8-020(c) or Section 9-16-030(c) of Municipal Code of the City of Chicago, **is of sufficient clarity and contains such information as is necessary (including clearly depicting the red traffic light) for the City to issue a citation for a violation of Section 9-102-020 of the Municipal Code of the City of Chicago**, as determined by the City." (Emphasis added).

(i) = the lesser of 5 or the difference between 85 minus the Program-wide Enforceability Percentage for the applicable consecutive 30-day period;

(ii) = the number of Systems.

(d)     The value of the Systems to the City is based, in part, on Vendor's providing the support, maintenance, repair, **digital image verification and web-based authorization services** in accordance with the terms of this Agreement . . .

(Emphasis added).

40.     The net effect of the Agreement's compensation provisions is that Redflex' full payment is contingent on its cameras allowing the City to issue Red Light violation citations over 85 percent of the time.

41.     With respect to the services that the City requires Redflex to perform, the Agreement provides in pertinent part as follows:

<u>**EXHIBIT 1**</u>

D.     <u>**Digital Image Verification and Storage/Revenue Coordination**</u>

Within 2 business days following the date on which an apparent Red Light Violation is recorded by a System, Vendor will perform Digital Image Verification and transfer to the Department of Revenue **those digital images that Vendor reasonably believes would constitute Enforceable Images (the "Verification Images").** Vendor will provide the City with internet access to Vendor's "Police Authorization" module to enable the Department of Revenue to review the Verification Images (see paragraph E. below). Within 2 days following notice from the Department of Revenue, Vendor will transfer (via an FTP site) to the Department of Revenue those digital images that the Department of Revenue has determined constitute Enforceable Images . . . Vendor will store all images produced by the Systems and related data for 2 years from the date that such image and data were produced.

E.    **Web-Based Authorization Services**

Vendor will provide web-based access to the City for verifying Red Light Violations . . . Vendor's web-based access will provide the City the ability to review and approve or reject Red Light Violations . . . Vendor will provide the City with web-based access to reports regarding the quantities of Red Light Violations from each System **and the reasons for Vendor's determining that an image was not a Verification Image.**

## EXHIBIT 4

**Equipment Maintenance and Support**

On a daily basis Vendor will ensure that each System meets the following parameters and will perform the following performance tests:

a.    the camera has a valid certificate to ensure it is authorized to process encrypted information;

b.    the enforcement mode is enabled and in the correct mode (e.g. red light only, speed only or both);

c.    the time in the red phase at which point the cameras capture Red Light Violations is properly configured;

d.    the detection device that interfaces to the external input signals at the intersection (i.e. inductive loop signals) is configured and functioning correctly;

e.    each lane enforced has the appropriate image capture settings configured to capture the offending vehicle at the appropriate time during the violation, and that it is set to the correct enforcement mode (e.g. red light only, speed only or both);

f.    the System settings are properly set (e.g., the speed limit is selected to be imprinted on the violation, the data block as accurate information identifying the proper location, machine identification and software version used; the loop separation is accurate in accordance with loop installation positioning; and the individual

12

cameras aperture, focus, zoom and exposure are properly configured for each individual camera);

g.      the download folder (where the Red Light Violation digital images are stored locally until Vendor downloads them) is properly configured;

h.      the detection systems have proper activity and signaling sequencing (e.g. the detection device is communicating with the main camera system; red and green phase indications are represented for each signal phase change; still images can be captured in real time remotely to verify that the phase message received from the detection device corresponds to the phase shown in the live still image taken; and each lane being monitored by the detection device has the appropriate number of messages to capture an offending vehicle); and

i.      a real time offense simulation system check is performed during the "green phase" of the signaling to verify proper operation and sequencing of image sets.  This final check simulates a Red Light Violation to verify all system parameters including image capture and encryption packaging are functioning properly.

(Emphasis added).

42.      Article 10.1 of the Agreement provides as follows:

**10.1   Compliance With All Laws Generally**

Vendor must observe and comply with all applicable federal, state, county and municipal laws, statutes, ordinance and executive orders, in effect now or later and whether or not they appear in this Agreement . . .

43.      Pursuant to an Amendment to the Agreement dated December 19, 2003, the City agreed to pay, and did pay, Redflex base compensation (subject to applicable reductions and set offs) of up to $3,020,000.00 for the initial term of the Agreement.

13

44.     The City paid and/or is continuing to pay Redflex base compensation (subject to applicable reductions and set offs) of up to an additional $13,449,000.00 for the subsequent term of the Agreement beginning on October 22, 2005 and continuing through October 21, 2008.

## APPLICABLE ORDINANCES AND STATUTES

45.     At all times relevant hereto there were in effect certain traffic laws of the State of Illinois which provides as follows:

a.      625 ILCS 5/1-105.5 **(effective prior to May 22, 2006)**.  Automated red light enforcement system. A system in a municipality with a population of 1,000,000 or more operated by a governmental agency, in cooperation with a law enforcement agency, that photographically records a motor vehicle's response to a traffic control signal with a red light indication and is designed to obtain a clear photograph of the vehicle and the vehicle's license plate **when the motor vehicle is involved in a motor vehicle accident, leaving the scene of a motor vehicle accident, or reckless driving that results in bodily injury**. (Emphasis added).

b.      625 ILCS 5/11-207.  The provisions of this Chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein.  Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Chapter, but such regulations shall not be effective until signs giving reasonable notice thereof are posted.

c.      625 ILCS 5/11-208.1.  The provisions of this Chapter of this Act, as amended, and the rules and regulations promulgated thereunder by any State Officer, Office, Agency, Department or Commission, shall be applicable and uniformly applied and enforced throughout this State, in all other political subdivisions and in all units of local government.

14

d.      625 ILCS 5/11-208.2.  The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Sections 11-208 . . .

e.      625 ILCS 5/11-208(f) **(not effective prior to May 22, 2006)**.  A municipality or county designated in Section 11-208.6 [related to home rule units] may enact an ordinance providing for an automated traffic law enforcement system to enforce violations of this Code or a similar provision of a local ordinance and imposing liability on a registered owner of a vehicle used in such a violation.

f.      625 ILCS 5/11-208.6 **(not effective prior to May 22, 2006)**. Automated traffic law enforcement system.  (a) used in this Section, "automated traffic law enforcement system" means a device with one or more motor vehicle sensors working in conjunction with a red light signal to produce recorded images of motor vehicles entering an intersection against a red signal indication in violation of Section 11-306 of this Code or a similar provision of a local ordinance . . .

g.      625 ILCS 5/11-305.  **(effective both prior to and after May 22, 2006)**.  Obedience to and required traffic-control devices. (a) The **driver** of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed or held in accordance with the provisions of this Act, unless otherwise directed by a police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this Act.  (Emphasis added).

h.      625 ILCS 5/11-306(c)(5) **(effective prior to May 22, 2006)**.  A municipality with a population of 1,000,000 or more may enact an ordinance that provides for the use of an automated red light enforcement system to enforce violations of this subsection (c) that result in or involve a motor vehicle accident, leaving the scene of a motor vehicle accident, or reckless driving that results in bodily injury.

i.      625 ILCS 5/16-104.  **(effective both prior to and after May 22, 2006)**. Penalties.  Every person convicted of a violation of any provision of this Code for which another penalty is not provided

15

shall, for a first or second conviction thereof, be guilty of a petty offense and, for a third or subsequent conviction within one year after the first conviction, be guilty of a Class C misdemeanor.

j.  725 ILCS 5/103-6.  Waiver of jury trial. Every person accused of an offense shall have the right to a trial by jury unless (i) understandingly waived by defendant in open court or (ii) the offense is an ordinance violation punishable by fine only and the defendant either fails to file a demand for a trial by jury at the time of entering his or her plea of not guilty or fails to pay to the clerk of the circuit court at the time of entering his or her plea of not guilty any jury fee required to be paid to the clerk.

(Emphases added).

46.  Section 9-102-020 of the Chicago Municipal Code provided at all relevant times after July 9, 2003 as follows:

(a)  The registered owner of record of a vehicle is liable for a violation of this section and a fine of $90.00 when the vehicle is used in violation of Section 9-8-020(c) or Section 9-16-030(c) and that violation is recorded by a traffic control signal monitoring device. A photographic recording of a violation obtained by a traffic control signal monitoring device shall be prima facie evidence of a violation of this chapter. It shall be a defense to a violation of this section that:

(1)  The operator of the vehicle was issued a uniform traffic citation for a violation of Section 9-8-020(c) or Section 9-16-030(c); or

(2)  The violation occurred at any time during which the vehicle or its state registration plates were reported to a law enforcement agency as having been stolen and the vehicle or its plates had not been recovered by the owner at the time of the alleged violation; or

(3)  The vehicle was leased to another, and, within 60 days after the citation was mailed to the owner, the owner submitted to the department of revenue the correct name and address of the lessee of the vehicle identified in the citation at the time of the violation, together with a copy of the lease agreement and any additional information as may be required by the department. Where the

16

lessor complies with the provisions of this section, the lessee of the vehicle at the time of the violation shall be deemed to be the owner of the vehicle for purposes of this chapter. The department of revenue, within 30 days of being notified by the lessor of the name and address of the lessee, shall mail the lessee a citation which contains the information required under Section 9-102-030. For the purposes of this chapter, the term "leased vehicle" shall be defined as a vehicle in which a motor vehicle dealership or manufacturer has, pursuant to a written document, vested exclusive possession, use, control and responsibility of the vehicle to the lessee during the periods the vehicle is operated by or for the lessee.

(b)    The provisions of this section do not apply to any authorized emergency vehicle or any vehicle lawfully participating in a funeral procession.

(c)    Nothing in this section shall be construed to limit the liability of an operator of a vehicle for any violation of Section 9-8-020(c) or Section 9-16-030(c).

47.    Section 9-8-020(c) of the Chicago Municipal Code provided at all relevant times as follows:

Whenever traffic is controlled by traffic-control devices exhibiting steady colored lights, successively one at a time, in combination or with arrows, the following colors only shall be used and **the signals shall indicate and apply to drivers of vehicles** and pedestrians as follows:

(c)    Steady Red Indication.

(1)    Except as provided in Section 9-16-030, vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown.

(2)    Except as provided in Section 9-16-030, vehicular traffic facing a steady red arrow signal shall not enter the intersection to make the movement indicated by the arrow and, unless entering the intersection to make a movement permitted by another signal, shall

17

> stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication permitting the movement indicated by such red arrow is shown.

(Emphasis added).

48.     Section 9-16-030(c) of the Chicago Municipal Code provided at all relevant times as follows:

> **Drivers** may not turn left or right on a steady red signal when official traffic-control devices have been erected indicating that such turns are prohibited.

(Emphasis added).

49.     At all relevant times, there was in full force and effect in the state of Illinois the Employment of Detectives by Public Officials Act, 5 ILCS 305/1, which provided as follows:

> No State, county or municipal officer, whose duty it is to investigate the commission of any crime or to prosecute persons accused of crime, shall employ any detective or investigator on a compensation basis other than that of time, and in no event shall compensation to such persons be contingent on the success of the investigation or prosecution. Evidence obtained in violation of this act shall be inadmissible in any court in this State for any purpose and any person employed in violation of this act shall be incompetent to testify in any court as to any information or evidence acquired by him in such employment.

50.     At all relevant times, there was in full force and effect in the state of Illinois the following statute, 65 ILCS 5/1-5-1:

> A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property

belonging to the municipality, or for any money which may have been
paid, expended, or released without authority of law . . .

## CLASS ALLEGATIONS

51.     This action is brought pursuant to 735 ILCS 5/2-801 which provides that a

case may be brought as a class action if

> (1)     The class is so numerous that joinder of all members is impracticable.

> (2)     There are questions of fact or law common to the class, which
> common questions predominate over any question affecting only
> individual members.

> (3)     The representative parties will fairly and adequately protect the
> interest of the class.

> (4)     The class action is an appropriate method for the fair and efficient
> adjudication of the controversy.

## CLASS DEFINITION

52.     The Plaintiffs' class definitions are as follows:

> A.      **Class 1.**  Class 1 is defined as all persons or entities who, prior to May
> 22, 2006, received a Complaint for a Red Light Violation for a vehicle
> of which he or she was the registered owner, the Complaint for which
> alleged a violation of 625 ILCS 5/1-105.5 or 625 ILCS 5/11-305 or 625
> ILCS 5/11-306(c)(5) or Sections 9-102-020, 9-8-010, 9-8-020 or 9-16-030
> of the Municipal Code of Chicago.

> B.      **Class 2.**  Class 2 is defined as all persons or entities who, on or after
> May 22, 2006, received a Complaint for a Red Light Violation for a
> vehicle of which he or she was the registered owner, the Complaint
> for which alleged a violation of 625 ILCS 5/1-105.5 or 625 ILCS 5/11-
> 305 or 625 ILCS 5/11-306(c)(5) or Sections 9-102-020, 9-8-010, 9-8-020
> or 9-16-030 of the Municipal Code of Chicago.

> C.      **Class 3**.  Class 3 is defined as all persons and entities who have been
> charged with an additional fine of $90.00 for have not timely complied

19

with the payment provisions required under any section or subpart of Title 9, Chapter 102 of the Municipal Code of Chicago.

## NUMEROSITY

53.     Class adjudication is superior to all other available methods for adjudication of this controversy, in that there are hundreds, perhaps thousands, of members of the Plaintiff classes. The Plaintiff classes are so numerous that joinder of all members is impracticable.

## COMMON QUESTIONS OF FACT AND LAW

54.     Common questions of law include but are not limited to:

a.      Whether Section 9-102-020 of the Chicago Municipal Code complied with Illinois statutory authority prior to or after May 22, 2006 and was or is enforceable;

b.      Whether Section 9-102-020 of the Chicago Municipal Code complied and complies with other sections of the Chicago Municipal Code, including but not limited to Sections 9-8-020 and 9-16-030(c);

c.      Whether Section 9-102-020 of the Chicago Municipal Code violated the substantive due process rights of registered owners of vehicles prior to and after May 22, 2006;

d.      Whether Section 9-102-020 of the Chicago Municipal Code violated the equal protection rights of registered owners of vehicles prior to and after May 22, 2006;

e.      The legality of issuing Red Light Violation Complaints to registered automobile owners for conduct described by the Municipal Code of Chicago and the State of Illinois that can only be conducted by the "driver" or "operator" of a vehicle;

f.      Whether the City can prosecute moving violations in a manner that is inconsistent with Illinois law.

55.     Common questions of fact include but are not limited to:

20

a. Whether the notice of hearing or payment provisions of Red Light Violations operate the same as other parking violations issued by the City of Chicago;

b. Whether the default time allotted the defendant of when a fine will double in amount is the same as in other traffic offenses;

c. Whether the City allows for jury trials for alleged Red Light Violations;

d. Whether or not the Illinois Secretary of State treats "Red Light Violations" as moving violations when they purport to be parking violations?

## COUNT I

### (Violation of Illinois Statutes - Prior to May 22, 2006)

1 - 55.   Plaintiffs replead paragraphs 1 through 55 above as paragraphs 1 through 55 of this Count I with the same force and effect as though fully set forth herein.

56.   At all times relevant hereto (prior to May 22, 2006), Chapter 625 of the Illinois Compiled Statutes restricted the use of automated red light enforcement systems to situations "when the motor vehicle is involved in a motor vehicle accident, leaving the scene of a motor vehicle accident, or reckless driving that results in bodily injury." 625 ILCS 5/1-105.5; 625 ILCS 5/11-306(c)(5).

57.   Prior to May 22, 2006, no Illinois statute existed that gave the City of Chicago, or any other political subdivision, municipality or local authority, the power to use automated red light enforcement systems or automated red light enforcement ordinances in situations not involving motor vehicle accidents or reckless driving that results in bodily injury.

21

58.     At all times relevant hereto (prior to May 22, 2006), Illinois statutes limited liability for the failure to obey the instructions of any official traffic-control device to the "driver" of any vehicle failing to obey such traffic-control device.  625 ILCS 5/11-305.

59.     At all times relevant hereto, Illinois statutes gave a right to a jury trial to all persons accused of a violation of any penal statute, including all moving violations.

60.     At all times relevant hereto, Illinois statutes prohibited evidence obtained in violation of 5 ILCS 305/1 from being admissible in any court in Illinois for any purpose. 5 ILCS 305/1.

61.     On and after July 9, 2003 and prior to May 22, 2006, the City of Chicago passed and enforced Section 9-102-020 of the Chicago Municipal Code, which authorized the use of automated red light enforcement systems to identify vehicles allegedly violating red traffic signals and to penalize the registered owners of such vehicles for the alleged acts or omissions committed by the drivers thereof.

62.     At all times relevant hereto, Illinois statutes prohibited all political subdivisions, municipalities and local authorities, including the City of Chicago, from enacting or enforcing any ordinance that conflicted with the provisions of Chapter 625 of the Illinois Compiled Statutes.  625 ILCS 5/11-207; 625 ILCS 5/11-208.2.

63.     At all times relevant hereto, Illinois statutes required the provisions of Chapter 625 of the Illinois Compiled States and any rules and regulations promulgated thereunder to be uniformly applied and enforced throughout the state.  625 ILCS 5/11-208.1.

64.     Prior to May 22, 2006, Section 9-102-020 of the Chicago Municipal Code conflicted with one or more Illinois statutes including, but not necessarily limited to, those set forth above and was thus invalid and unenforceable on its face by, among other things:

   a.     shifting liability for red light violations from drivers to vehicle owners;

   b.     allowing automated red light enforcement systems to be used in situations other than those involving motor vehicle accidents or reckless driving that results in bodily injury;

   c.     allowing unlawfully collected evidence to be used at red light violation hearings; and

   d.     not allowing for jury trials for alleged violations.

65.     At all times relevant hereto, including both before and after May 22, 2006, the act of a driver failing to obey a red traffic signal constituted a criminal offense pursuant to 625 ILCS 5/11-305 and other Illinois statutes.

66.     At all times relevant hereto, including both before and after May 22, 2006, the act of a driver failing to obey a red traffic signal in the City of Chicago constituted a quasi-criminal offense pursuant to 9-102-020 of the Chicago Municipal Code.

67.     Pursuant to the Agreements entered into between the City of Chicago and Defendant Redflex on or about October 17, 2003 and October 22, 2005, Defendant Redflex agreed to, was obligated to and did in fact collect, examine and evaluate in a detailed manner evidence that it collected related to whether drivers throughout the City of Chicago failed to obey red traffic signals at intersections where Redflex had installed Digital Automated Red Light Enforcement Systems.

68.     Pursuant to the Agreements entered into between the City of Chicago and Defendant Redflex on or about October 17, 2003 and October 22, 2005, Redflex' compensation was based in part on Redflex meeting an 85% success rate with being able to provide the City of Chicago with "Enforceable Images", defined as images being "of sufficient clarity and contains such information as is necessary . . . for the City to issue a citation . . ."

69.     Pursuant to 9-102-020 of the Chicago Municipal Code, an Enforceable Image constitutes prima facie evidence of a red light violation.

70.     In violation of 5 ILCS 305/1, the City and its agents, which are and have been investigating the commission of a crime or quasi-crime in the form of alleged red light violations, have employed an investigator (Redflex) on a compensation basis other than that of time and have made such compensation to Redflex partially contingent on the success of Redflex' investigation and the City's prosecution of alleged red light violations.

71.     The City of Chicago has collected millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

72.     The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

73.     Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or

could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

74.     The parties herein are interested parties.

75.     There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)     Certify this law suit as a class action;

B)     Appoint undersigned counsel as class counsel;

C)     Construct a trust of all funds wrongfully taken by the Defendants;

D)     Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)     Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)     Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT II
### (Violations of Due Process Provisions of the
### Illinois Constitution (Substantive))

1-75.    Plaintiffs replead paragraphs 1 through 75 above as paragraphs 1 through 75 of this Count II with the same force and effect as though fully set forth herein.

76.    Article I, Section 2 of the Illinois Constitution provides as follows:

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

77.    The City's "Red Light" program as described above violates the substantive due process rights of the named plaintiffs and putative class plaintiffs by penalizing the registered owners of vehicles for alleged acts or omissions committed by the drivers of such vehicles, without regard for whether the registered owners were driving their vehicles at the time of the alleged commission of the red light violation.

78.    The promulgation and enforcement of Section 9-102-020 of the Chicago Municipal Code and its related Sections bears no rational relationship to any legitimate governmental purpose of the City of Chicago.

79.    The promulgation and enforcement of Section 9-102-020 of the Chicago Municipal Code and its related Sections is arbitrary, capricious and unreasonable in that the ordinance makes irrelevant whether the penalized party actually violated a red traffic-signal.

80.    Further, the enforcement of Section 9-102-020 of the Chicago Municipal Code requires the City to use evidence obtained in violation of 5 ILCS 305/1, which evidence is statutorily inadmissible pursuant to 5/ILCS 305/1.

26

81. The City of Chicago has collected hundreds of thousands or millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

82. The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

83. Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

84. The parties herein are interested parties.

85. There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A) Certify this law suit as a class action;

B) Appoint undersigned counsel as class counsel;

27

C)      Construct a trust of all funds wrongfully taken by the Defendants;

D)      Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)      Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)      Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT III

### (Violations of Equal Protection Provisions of the Illinois Constitution (Leasing Classification))

1-85.    Plaintiffs replead paragraphs 1 through 85 above as paragraphs 1 through 85 of this Count III with the same force and effect as though fully set forth herein.

86.    Article I, Section 2 of the Illinois Constitution provides as follows:

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

87.    The City's "Red Light" program as described above violates the equal protection rights of the named plaintiffs and putative class plaintiffs by treating the registered owners of non-leased vehicles or registered owners of leased or loaned vehicles without a written lease agreement differently than the registered owners of leased vehicles with a written lease agreement.

88.    Pursuant to Section 9-102-020(a)(3) of the Chicago Municipal Code, it shall be a defense to a violation of this section that . . . the vehicle was leased to another, and, within 60 days after the citation was mailed to the owner, the owner submitted to the

28

department of revenue the correct name and address of the lessee of the vehicle identified in the citation at the time of the violation, together with a copy of the lease agreement . . . Where the lessor complies with the provisions of this section, the lessee of the vehicle shall be deemed to be the owner of the vehicle for purposes of this chapter."

89.     Pursuant to Section 9-102-020(a)(3) of the Chicago Municipal Code, motor vehicle dealerships and manufacturers who lease cars to third parties pursuant to a written lease agreement will not be found liable whereas a registered vehicle owner who leases a car to a third party without a written lease agreement does not have a defense to the ordinance.

90.     Additionally, pursuant to Section 9-102-020(a)(3), taxicab companies who own their fleet of vehicles and lease such vehicles out to third party operators, even with written lease agreements, do not have a defense to the ordinance.

91.     The classifications contained within Section 9-102-020 of the Chicago Municipal Code and its related Sections, which distinguish motor vehicle dealerships and manufacturers from all other vehicle owners, lack any rational basis, and render the ordinance invalid on its face and unenforceable.

92.     The City of Chicago has collected hundreds of thousands or millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

93.     The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

94.     Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

95.     The parties herein are interested parties.

96.     There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)      Certify this law suit as a class action;

B)      Appoint undersigned counsel as class counsel;

C)      Construct a trust of all funds wrongfully taken by the Defendants;

D)      Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

30

E)      Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)      Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT IV

### (Violations of Equal Protection Provisions of the Illinois Constitution (Ordinance Prosecution Classification))

1-96.   Plaintiffs replead paragraphs 1 through 96 above as paragraphs 1 through 96 of this Count IV with the same force and effect as though fully set forth herein.

97.     Article I, Section 2 of the Illinois Constitution provides as follows:

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

98.     The City's "Red Light" program as described above violates the equal protection rights of the named plaintiffs and putative class plaintiffs by treating persons or entities prosecuted under the Red Light Program differently than persons or entities prosecuted by the State of Illinois under 625 ILCS 5/11-305(a) or 625 ILCS 5/11-306.

99.     Pursuant to Chapter 9-102 of the Chicago Municipal Code and the rules and regulations promulgated thereunder, a registered owner of a vehicle that violates the Red Light ordinance, where such owner was also the operator of the allegedly offending vehicle, is fined $90  upon each conviction, regardless of how many such violations the driver had previously committed.

100.     For exactly the same conduct (violating a red traffic-signal) prosecuted under 625 ILCS 5/11-305(a) or 625 ILCS 5/11-306, the driver would be guilty of a "petty offense"

(fine only) for the first or second conviction, and the driver would be guilty of a Class C misdemeanor (fine/ points off license/other penalties) for the third and all subsequent convictions occurring within 1 year of the first conviction.

101.    The classification contained within Section 9-102-020 of the Chicago Municipal Code and its related Sections, which require a different treatment than the same offense prosecuted under a state statute, lacks any rational basis, and renders the ordinance invalid on its face and unenforceable.

102.    The City of Chicago has collected hundreds of thousands or millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

103.    The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

104.    Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

105.    The parties herein are interested parties.

106.     There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)     Certify this law suit as a class action;

B)     Appoint undersigned counsel as class counsel;

C)     Construct a trust of all funds wrongfully taken by the Defendants;

D)     Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)     Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)     Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT V

### (Violations of Due Process Provision of the Illinois Constitution (Procedural))

1-106.  Plaintiffs replead paragraphs 1 through 106 above as paragraphs 1 through 106 of this Count V with the same force and effect as though fully set forth herein.

107.     Article I, Section 2 of the Illinois Constitution provides as follows:

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

108.     The City's "Red Light" program as described above violates the procedural due process rights of the named plaintiffs and putative class plaintiffs by, in a quasi-criminal proceeding, establishing a conclusive presumption of liability without affording plaintiffs and putative class plaintiffs any opportunity to defend themselves as long as: i) the actual driver was not issued a citation; ii) the vehicle was not stolen; or iii) the vehicle was not leased by a vehicle dealership or manufacturer pursuant to a written lease agreement.

109.     Vehicle owners are not afforded meaningful notice or a meaningful opportunity to be heard because they cannot defend the Complaint by arguing that they were not operating the vehicle when it allegedly violated a red traffic-signal.  Further, vehicle owners cannot obtain a jury trial, which constitutes a further procedural due process violation.

110.     In addition, the City's enforcement of the Red Light program requires the use of evidence obtained in violation of 5 ILCS 305/1, which evidence is statutorily inadmissible pursuant to 5 ILCS 305/1.

111.     The lack of appropriate procedural safeguards contained within Section 9-102-020 of the Chicago Municipal Code and its related Sections renders it invalid on its face and unenforceable.

112.     The City of Chicago has collected hundreds of thousands or millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

34

113.    The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

114.    Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

115.    The parties herein are interested parties.

116.    There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)    Certify this law suit as a class action;

B)    Appoint undersigned counsel as class counsel;

C)    Construct a trust of all funds wrongfully taken by the Defendants;

D)    Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

35

E)    Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)    Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT VI

### (Conflict with Chicago Municipal Code)

1-116.  Plaintiffs replead paragraphs 1 through 116 above as paragraphs 1 through 116 of this Count VI with the same force and effect as though fully set forth herein.

117.    Sections 9-18-020 and 9-16-030(c) of the Chicago Municipal Code provide that traffic-control signals shall apply only to **drivers**.

118.    Chapter 9-102 of the Chicago Municipal Code conflicts with the above provisions of the Chicago Municipal Code by creating traffic-control signal violations for registered owners of allegedly offending vehicles.

119.    The conflicts contained within Section 9-102-020 of the Chicago Municipal Code and its related Sections renders it invalid on its face and unenforceable.

120.    The City of Chicago has collected hundreds of thousands or millions of dollars through its unlawful enforcement of Section 9-102-020 of the Chicago Municipal Code.

121.    The payment of all fines and penalties by registered owners of vehicles pursuant to Section 9-102-020 of the Chicago Municipal Code and its related ordinances constituted payments made under duress and not made voluntarily.

36

122.    Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

123.    The parties herein are interested parties.

124.    There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)      Certify this law suit as a class action;

B)      Appoint undersigned counsel as class counsel;

C)      Construct a trust of all funds wrongfully taken by the Defendants;

D)      Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)      Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)      Award attorneys' fees and such other relief as this Court deems just and proper.

37

## COUNT VII

### (42 U.S.C. §§ 1983, 1988)

1-124.  Plaintiffs replead paragraphs 1 through 124 above as paragraphs 1 through 124 of this Count VII with the same force and effect as though fully set forth herein.

125.    At all times relevant herein, by prosecuting alleged Red Light Complaints pursuant to City ordinances, Defendants acted under color of law.

126.    At all times relevant herein, Defendants' acts or omissions were intentional.

127.    At all times relevant herein, Plaintiffs had a right under the due process and equal protection clauses of the state and federal constitutions not to be deprived of their constitutionally protected interest in their property. U.S.C. Const. Amend. 14; Ill. Const. Art. 1, Sec. 2.

128.    At all times relevant herein, Defendants were state actors and their conduct was subject to 42 U.S.C. §§ 1983 and 1988.

129.    As a result of Defendants' concerted  unlawful and malicious conduct, Plaintiffs were both deprived of their rights to equal protection of all the laws and to due process of law, of their right to their property, and the due course of justice was impeded, in violation of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

130.    Plaintiffs have incurred damages in the form of paid fines to Defendants as a direct result of Defendants' acts or omissions.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)   Certify this law suit as a class action;

B)   Appoint undersigned counsel as class counsel;

C)   Construct a trust of all funds wrongfully taken by the Defendants;

D)   Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)   Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)   Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT VIII

**(Preliminary and Permanent Injunctive Relief)**

131.   Plaintiffs replead paragraphs 1 through 136 above as paragraphs 1 through 136 of this Count VIII with the same force and effect as though fully set forth herein.

132.   Defendants' continued enforcement of Chapter 9-102 of the Municipal Code of Chicago constitutes a continuing violation of state, local and federal laws as set forth above.

133.   Defendants' continued unlawful enforcement of Chapter 9-102 of the Municipal Code of Chicago must be preliminarily and permanently enjoined to prevent further deprivations of the rights of alleged offenders.

39

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)   Certify this law suit as a class action;

B)   Appoint undersigned counsel as class counsel;

C)   Construct a trust of all funds wrongfully taken by the Defendants;

D)   Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)   Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

F)   Enjoin Defendants' enforcement of Chapter 9-102 of the Chicago Municipal Code;

G)   Award attorneys' fees and such other relief as this Court deems just and proper.

## COUNT IX

### (Declaratory Judgment)

1-133.  Plaintiff City of Chicago ex rel. Robert Green realleges and incorporates by reference herein Paragraphs 1 through 133  above as Paragraphs 1 through 133 herein.

134.    At all times relevant hereto, including both before and after May 22, 2006, the act of a driver failing to obey a red traffic signal constituted a criminal offense pursuant to 625 ILCS 5/11-305 and other Illinois statutes.

135.    At all times relevant hereto, including both before and after May 22, 2006, the act of a driver failing to obey a red traffic signal in the City of Chicago constituted a quasi-criminal offense pursuant to 9-102-020 of the Chicago Municipal Code.

136.    Pursuant to the Agreements entered into between the City of Chicago and Defendant Redflex on or about October 17, 2003 and October 22, 2005, Defendant Redflex agreed to, was obligated to and did in fact collect, examine and evaluate in a detailed manner evidence that it collected related to whether drivers throughout the City of Chicago failed to obey red traffic signals at intersections where Redflex had installed Digital Automated Red Light Enforcement Systems.

137.    Pursuant to the Agreements entered into between the City of Chicago and Defendant Redflex on or about October 17, 2003 and October 22, 2005, Redflex' compensation was based in part on Redflex meeting an 85% success rate with being able to provide the City of Chicago with "Enforceable Images", defined as images being "of sufficient clarity and contains such information as is necessary . . . for the City to issue a citation . . ."

138.    Pursuant to 9-102-020 of the Chicago Municipal Code, an Enforceable Image constitutes prima facie evidence of a red light violation.

139.    In violation of 5 ILCS 305/1, the City and its agents, which are and have been investigating the commission of a crime or quasi-crime in the form of alleged red light violations, have employed an investigator (Redflex) on a compensation basis other than that of time and have made such compensation to Redflex partially contingent on the success of Redflex' investigation and the City's prosecution of alleged red light violations.

140.    The Agreements between the City and Redflex are void pursuant to 5 ILCS 305/1 and as a matter of public policy.

41

141.    Any demand made to the City of Chicago by Plaintiff Robert Green for the City to sue Redflex for a return of City monies paid to Redflex pursuant to the Agreements would be futile.  Among other things, the City has taken the position in this litigation by moving to dismiss Plaintiffs' claims that the red light traffic enforcement system, including 9-102-020 of the Chicago Municipal Code, is valid and enforceable.  Further, the City has invested millions of dollars in the red light enforcement program, including its Agreements with Redflex and has collected tens of millions of dollars through its unlawful enforcement of the program.  The City is inadequately protecting the public interest and it is not going to invalidate its Agreements with Redflex.

142.    The City's past and ongoing payments of over $16,000,000.00 pursuant to its Agreements with Redflex were and continue to be unlawful and void.

143.    Section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, provides that "[t]he Court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation . . . and a declaration of the rights of the parties interested."

144.    The parties herein are interested parties.

145.    There exists a case of actual controversy in that the Defendants have collected substantial sums of money pursuant to an invalid and unenforceable ordinance and will

not return any of the wrongfully collected funds without a declaration of the parties' rights herein.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully pray that the Court issue the following relief:

A)    Certify this law suit as a class action;

B)    Appoint undersigned counsel as class counsel;

C)    Construct a trust of all funds wrongfully taken by the Defendants;

D)    Appoint a trustee to supervise an accounting, to take control of all wrongfully taken funds, and to supervise the relief to be ordered by the Court;

E)    Declare all Agreements between and among Defendants void and unenforceable;

F)    Enter judgment against the Defendants to disgorge all wrongfully taken funds with pre-judgment interest;

G)    Award attorneys' fees and such other relief as this Court deems just and proper.

PARVEEN IDRIS, BINDER ELECTRIC SERVICE CO., and KJJ ENTERPRISE INC., individually and on behalf of all others similarly situated, and CITY OF CHICAGO EX REL. ROBERT GREEN

By: _____
        One of their attorneys

43

Robert A. Holstein
Holstein Law Offices
19 S. LaSalle Street, Suite 1500
Chicago, IL  60603
312-906-8000
Atty. No. 1251600

C. Corey S. Berman
Law Office of C. Corey S. Berman, Ltd.
19 S. LaSalle Street, Suite 1500
Chicago, IL  60603
312-263-0133
Atty. No. 6203763

Richard E. Schimmel
2900 W. Peterson Avenue
Chicago, Illinois 60659
773- 338-3631

William J. Harte
William J. Harte Ltd.
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
312-726-5015

Edward L. Cooper
Kiesler & Berman
Three First National Plaza
70 W. Madison Street, Suite 4200
Chicago, Illinois 60602
312-332-2840