IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARVEEN IDRIS, BINDER ELECTRIC SERVICE CO., and KJJ ENTERPRISE INC., individually and on behalf of all similarly situated persons and entities, and CITY OF CHICAGO ex rel. ROBERT GREEN,<br><br>               Plaintiffs,<br><br>  v.<br><br>CITY OF CHICAGO, CHICAGO OFFICE OF EMERGENCY MANAGEMENT AND COMMUNICATION, CHICAGO DEPARTMENT OF REVENUE, CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, RICHARD M. DALEY, and REDFLEX TRAFFIC SYSTEMS, INC., a foreign corporation,<br><br>               Defendants. | No. 06 C 6085<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Parveen Idris ("Idris"), Binder Electric Service Co. ("Binder"), KJJ Enterprise, Inc. ("KJJ"), and Robert Green ("Green") bring this action against the City of Chicago (the "City"), Redflex Traffic Systems, Inc. ("Redflex"), and various other parties, claiming that defendants violated Chicago ordinances, Illinois statutes, the Illinois Constitution, and the United States Constitution when defendants implemented a program that uses automated cameras to catch vehicles in the act of entering intersections against red traffic lights. Before the court are two motions to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), one filed by the City and one filed by Redflex. Both motions argue that plaintiffs have failed to state a claim upon which relief may be granted.

For the reasons set forth below, the motions are granted in part and denied in part. Counts II, III, IV, and VIII of the complaint are dismissed. But because the court's jurisdiction over this case is based upon the existence of a federal question (*see* 28 U.S.C. §§ 1441 and 1446), the court makes no ruling on the remaining counts, which are governed by areas of Illinois law that are not analogous to federal law. The remaining counts are therefore dismissed without prejudice, to allow plaintiffs to re-file those claims in a court of Illinois if they so choose.

## STANDARD OF REVIEW

Rule 12(b)(6) allows a defendant to move for dismissal for "failure to state a claim upon which relief can be granted." When considering whether to dismiss a complaint under Rule 12(b)(6), the court takes the well-pleaded factual allegations in the complaint as true and draws all possible inferences from those allegations in favor of the plaintiff. *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (quoting *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must satisfy Fed. R. Civ. P. 8(a)(2), which imposes "two easy-to-clear hurdles," *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint's factual allegations must be sufficiently detailed to give the defendant fair notice of the plaintiff's claims and the grounds upon which those claims rest. *Id.* (Citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007)). Second, the factual allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Concentra*, 496 F.3d at 776 (quoting *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14) (internal quotation marks omitted).

## RELEVANT FACTS

In July 2003, the City of Chicago enacted Chapter 9-102 of the Chicago Traffic Code ("Chapter 9-102"), which purportedly allows the City to install cameras at traffic intersections throughout Chicago. The cameras automatically record photographs of cars that either enter an intersection against a red traffic light or make a turn in the face of a red light when turning is prohibited. *See* Traffic Code § 9-102-020(a) (citing Traffic Code §§ 9-8-020(c) and 9-16-030(c)). These photographs are "prima facie evidence" of traffic violations, and the registered owner of a car is, in general, liable for a $90 fine if the owner's car is photographed running a red light. Traffic Code §§ 9-102-020(a).

A car owner saddled with a $90 fine under Chapter 9-102 may contest the fine via mail or an administrative hearing. Traffic Code 9-102-040. But an owner may raise only a limited number of defenses, and cannot deny liability simply by claiming he or she was not driving the car at the time of the red light violation. *See* Traffic Code 9-102-040. Thus, if a car owner lends her car to a friend, the friend runs a red light, and the incident is caught on camera, the owner rather than the friend will be liable for the $90 fine. *Id.*. However, Chapter 9-102 makes an exception if the registered owner of the car is either a motor vehicle dealership or a manufacturer and has formally leased the car pursuant to a written lease agreement. Traffic Code 9-102-020(a)(3). In that case, the lessee rather than the registered owner is liable for the red light violation. *Id*.

Three of the plaintiffs in this case—Idris, Binder, and KJJ—were issued traffic citations under Chapter 9-102. However, they were not actually driving at the time of the alleged infractions. Indeed, Idris was outside the United States when her car violated Chapter 9-102.

Idris and KJJ paid their $90 fines, but Binder has not done so. Plaintiffs contest the validity of Chapter 9-102, claiming it violates the laws and Constitution of Illinois and the Constitution of the United States. The individual plaintiffs do not claim that any of the defenses listed in Chapter 9-102 apply to their respective cases.

## DISCUSSION

**1.     Equal Protection**

Counts III and IV of the complaint claim that Chapter 9-102 violates the equal protection provision of the Illinois Constitution, and Count VII restates these claims under the United States Constitution. Because equal protection claims under the Illinois and United States Constitutions are governed by an identical standard, *see, e.g., Wauconda Fire Protection Dist. v. Stonewall Orchards, LLP*, 828 N.E.2d 216, 226 (Ill. 2005), the court will analyze plaintiffs' state and federal equal protection claims under federal standards of equal protection.

In Count III, plaintiffs claim that the defense given to car dealerships and manufacturers but not to other vehicle owners—*i.e.*, the defense that a car caught running a red light was formally leased to another person—creates a legislative classification that "lack[s] any rational basis, and render[s] the ordinance invalid on its face." In Count IV, plaintiffs claim that Chapter 9-102 violates equal protection because the Chapter provides a lighter punishment for conduct that is punished more severely under Illinois state law, and therefore Chapter 9-102 "lacks any rational basis, and renders the ordinance invalid on its face." The court concludes that neither of these counts states a claim upon which relief may be granted, and therefore both must be dismissed.

*A.     Standing*

As a threshold matter, the City argues that plaintiffs do not have standing to bring their equal protection claims. Generally, a plaintiff has standing when the plaintiff suffers an injury-in-fact that is able to be redressed by the courts. *See Kochert v. Greater Lafayette Health Services, Inc.*, 463 F.3d 710, 714 (7th Cir. 2006) (citing *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir.2003)). More specifically, standing requires that, "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 922 (7th Cir.1995) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982)) (internal quotation marks omitted).

Plaintiffs' equal protection claims satisfy the legal requisites for standing. Plaintiffs have suffered injuries—that is, they have paid or have been ordered to pay fines of $90, and face the possibility of paying additional fines in the future. These injuries are fairly traceable to defendants' conduct, because the fines at issue in this case are a direct result of defendants' implementation of Chapter 9-102, which plaintiffs allege is unlawful. Finally, a court decision invalidating Chapter 9-102 and granting damages to plaintiffs would most certainly redress plaintiffs' injuries.

The City's standing argument misconstrues the equal protection claim found in Count III. The City argues that Count III requires plaintiffs to allege that they "actually leased their vehicles," because Count III discusses Chapter 9-102's distinction between formal lessors

5

(vehicle dealerships and manufacturers) and informal lessors (*e.g.*, car owners who allow friends to drive the owners' cars). However, Count III, read broadly, merely challenges the legislative classification between car dealerships and manufacturers on the one hand, and all other car owners on the other hand. Whether plaintiffs had actually "leased" their cars at the time of the red light infractions at issue is not an essential element of Count III.

The City also argues that plaintiffs lack standing to bring Count IV, which claims that Chapter 9-102 is void because it punishes red light violations differently than they are punished under Illinois state law. The City argues that because the Illinois state laws at issue (specifically, 625 ILCS 5/11-305(a) and 625 ILCS 5/11-306) punish drivers rather than vehicle owners, and because plaintiffs were not driving when their cars violated red traffic lights, plaintiffs cannot rely on the Illinois laws to challenge Chapter 9-102. If plaintiffs were challenging the Illinois laws, the City might have a viable standing argument, because plaintiffs were not punished under those laws and do not allege that they are in imminent danger of being punished under them. However, plaintiffs are not challenging the Illinois state laws. Rather, plaintiffs challenge only Chapter 9-102, under which they were fined. Though the legal claims made in Count IV might not be legally cognizable under existing case law, plaintiffs have standing to bring Count IV for the reasons discussed immediately above—namely, that plaintiffs have adequately alleged an injury that was caused by the defendants and can be redressed by this court.

  B.  *Count III — Classification of Vehicle Dealers and Manufacturers*

As noted above, Count III argues that Chapter 9-102 is invalid because it distinguishes between car dealerships and manufacturers on the one hand and all other car owners on the other. Under Chapter 9-102, if a car dealership or manufacturer formally leases a car to a lessee

6

and can produce a written lease, the dealership or manufacturer is not vicariously liable for the lessee's violation of traffic signals. Traffic Code § 9-102-020(a)(3). However, other car owners, even if they have relinquished control of their cars to friends or business associates, are liable when those friends or associates run red lights.

Under federal law, "unless a statute classifies by race, alienage, or national origin or impinges on fundamental constitutional rights, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1072 (7th Cir. 2005) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 766 (7th Cir. 2003)) (internal quotation marks omitted). Plaintiffs do not argue or allege that Chapter 9-102 creates a suspect class or impinges on a fundamental right. Indeed, Count III specifically states that the provisions of Chapter 9-102 "lack any rational basis." Therefore, the court will analyze Count III under the rational basis test.

The rational basis test is a deferential form of review that prevents courts from interfering too much with the work of legislatures. *See, e.g., Heller v. Doe*, 509 U.S. 312, 319-20 (1993). A plaintiff attempting to invalidate a statutory classification under the rational basis test faces an uphill battle and must "negative every conceivable basis which might support it." *Id.* at 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)) (internal quotation marks omitted). Further, a party may defend a statutory classification subject to the rational basis test without any "quantum of evidence," and the defense may be based upon any "sound reason for the legislation." *Univ. Prof'ls of Illinois v. Edgar*, 114 F.3d 665, 667 (7th Cir.

7

1997) (citing *National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995)).

The City suggests that the purpose of Chapter 9-102 is to deter people from violating traffic laws, and the City has proffered at least one sound reason why Chapter 9-102 treats car dealerships and manufacturers more favorably than other car owners: "Lessors of cars have, in effect, turned over regular, active possession and use, and lack day-to-day control over who drives the vehicle," whereas a car owner who "simply lends his vehicle to another individual . . . retains responsibility for the vehicle." The City contends that, if it were forced to give a defense to all car owners who have loaned their cars to friends, this would "present[] enforcement problems" because, for example, the City would have a hard time discovering whether a particular car was actually lent to a friend on a long-term basis or was still under the control of the owner at the time the car ran a red light.

Plaintiffs attempt to attack Chapter 9-102 by suggesting ways in which the City might be more effective in deterring traffic violations. Plaintiffs suggest that the City could target drivers rather than car owners, post visible signs alerting drivers that intersections are monitored by cameras, and use "sounds, lights or other mechanisms" to warn a driver who has run a red light. However, the Supreme Court teaches that "rational basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller*, 509 U.S. at 319 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Thus, plaintiffs' suggestions to improve Chapter 9-102 do not negate the City's proffered basis for Chapter 9-102's favorable treatment of car dealerships and manufacturers.

Plaintiffs also argue that Chapter 9-102 lacks a legitimate purpose altogether. Plaintiffs suggest that Chapter 9-102 was designed merely to be a source of revenue for the City and does "not even attempt to further" the legitimate purpose of deterring traffic violations. But even if the City enacted Chapter 9-102 out of a desire to raise revenue, well-settled precedent teaches that a legislature need not have had a legitimate purpose in mind when it passed a statute—"retrospective logic" is ample justification for a statute challenged under the rational basis test. *See Edgar*, 114 F.3d at 667 (collecting cases). Plaintiffs' arguments about revenue production do not undermine the justifications for Chapter 9-102 proffered by the City, even if those justifications amount to "retrospective logic."

The City's proffered arguments in support of Chapter 9-102's treatment of car dealerships and manufacturers withstand rational basis review. Thus, even at this stage in the litigation, Count III and Count VII (insofar as it is based upon Count III) cannot stand and are dismissed. *Cf. Edgar*, 114 F.3d at 668 (upholding dismissal of an equal protection challenge to legislation at the motion to dismiss stage).

    C.    *Count IV — Different Punishment under State Law*

Count IV argues that Chapter 9-102 "require[s] a different treatment [for red light violations] than the same offense prosecuted under a state statute" and for this reason, Chapter 9-102 "lacks any rational basis" and is facially invalid. Plaintiffs do not mention or develop this claim in their memorandum opposing the motions for dismissal. In the complaint, however, plaintiffs cite two Illinois statutes, 625 ILCS 5/11-305(a) and 625 ILCS 5/11-306, and claim that under those statutes a driver can be punished with increasingly stringent criminal sanctions for multiple red light violations, whereas under Chapter 9-102, the driver of a car (if the driver is

9

also the owner of the car) is punished with an unvarying fine of $90 for the same conduct. The City counters that the "fact that one law differs from another does not, in and of itself, create a federal equal protection violation."

Plaintiffs have not stated an equal protection claim in Count IV. Rather than challenging some legislative classification created by Chapter 9-102, plaintiffs argue that it is unlawful, under equal protection jurisprudence, for the City to enact a law punishing conduct already punished by a different law enacted by the State of Illinois. Simply put, plaintiffs do not challenge a classification made by Chapter 9-102. Rather, they challenge the prospect of multiple punishments for the same conduct. Such a claim is not cognizable under the equal protection clause, because nowhere in Count IV do plaintiffs allege that Chapter 9-102 treats similarly situated people differently, or that the laws of Illinois or Chicago are being enforced in a discriminatory manner. *See Jones v. Helms*, 452 U.S. 412, 423-24 (1981) (there was no equal protection claim because the law at issue, by its terms, applied universally and had not been enforced in a discriminatory manner). Indeed, plaintiffs allege that *all* drivers face the prospect of multiple punishments, not just some.

Plaintiffs' claim appears to be, in reality, a double jeopardy argument. However, if Chapter 9-102 employs civil sanctions rather than criminal sanctions, plaintiffs cannot state a double jeopardy claim. *See, e.g., U.S. v. Van Waeyenberghe*, 481 F.3d 951, 958 (7th Cir. 2007) (citing *Hudson v. United States*, 522 U.S. 93, 98 (1997)) ("The Double Jeopardy Clause protects only against multiple *criminal* punishments meted out in successive proceedings.") (emphasis in original). The fact that fines under Chapter 9-102 are adjudicated in an administrative framework rather than a criminal one is prima facie evidence that the $90 fine is civil rather than

10

criminal. *See Turner v. Glickman*, 207 F.3d 419, 429 (7th Cir. 2000). Further, small, fixed, administrative traffic fines have been recognized as civil rather than criminal by the Seventh Circuit in at least one case. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1350 (7th Cir. 1997). Finally, even if the statutory scheme at issue could possibly create a double jeopardy claim, plaintiffs could not raise such a claim in this suit, because plaintiffs do not allege that they have been or will be punished twice for the same conduct—they allege only that they could conceivably be punished twice under different statutes. *See, e.g., Edwards v. Ryker*, No. 06 C 4271, 2007 WL 1232197, at *8 (N.D. Ill. Apr. 25, 2007) (Bucklo, J.) (*quoting United States v. Wilson*, 420 U.S. 332, 344 (1975) ("[W]here there is no threat of either multiple sentences or successive prosecutions, the Double Jeopardy Clause is not offended.") (alteration in original).

For the above reasons, Count IV and Count VII (insofar as it is based upon Count IV) is dismissed.

**2.     Substantive Due Process**

Count II alleges that Chapter 9-102 violates the substantive due process protections of the Illinois Constitution, and Count VII restates those allegations in the context of the United States Constitution. Like Illinois equal protection, Illinois substantive due process is governed by an analysis similar to that found in federal case law. *See People v. Winterhalter*, 730 N.E.2d 1158, 1162-63 (Ill. App. Ct. 2000). Therefore, the court will employ federal standards to analyze Count II and that part of Count VII that incorporates Count II.

Count II alleges that Chapter 9-102 is "arbitrary, capricious and unreasonable in that the ordinance makes irrelevant whether the penalized party [*i.e.*, the owner of a car] actually violated a red traffic-signal." In their memorandum opposing the motions to dismiss, plaintiffs invoke

11

the rational basis standard to support their substantive due process argument. The City, on the other hand, argues that ample case law supports Chapter 9-102's imposition of liability on car owners rather than car drivers, and that an "innocent owner defense" is not constitutionally mandated. When a government action is challenged under substantive due process, a court must first determine whether a fundamental right is implicated and if not, must apply the rational basis test. *See, e.g., Doe v. City of Lafayette*, 377 F.3d 757, 773 (7th Cir. 2004) ("Because we have concluded that the City's [action] does not encroach on a fundamental liberty interest, we are bound to apply the rational basis standard of review . . . ."). As noted above, plaintiffs concede that the rational basis test applies. Moreover, precedent suggests that plaintiffs' interest in a $90 fine for a traffic violation is not fundamental. *See City of Lafayette*, 377 F.3d at 770 (collecting cases and listing various fundamental rights recognized by the Supreme Court). In cases such as this, where only a property interest is implicated, the plaintiff must also allege either that state law remedies are inadequate or that an independent constitutional right has been violated—otherwise, not even rational basis review applies. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). Because plaintiffs allege that the defenses available under Chapter 9-102 are inadequate, and because plaintiffs have alleged violations of various constitutional rights, including procedural due process and equal protection rights, the court will assume that plaintiffs are able to invoke rational basis review and will examine the merits of their claim.

The rational basis test under substantive due process is identical to the rational basis test under equal protection, and requires only that a government action be "rationally related to a legitimate government interest." *City of Lafayette*, 377 F.3d at 773 (quoting *Lee*, 330 F.3d at 467). The City argues that Chapter 9-102 is rationally related to advancing its interest in

12

deterring traffic violations and promoting traffic safety. Plaintiffs argue that Chapter 9-102 suffers from "overbreadth," and that it unconstitutionally places liability on a vehicle's owner, even when the owner was not driving at the time of a red light violation.

In *Bennis v. Michigan*, 516 U.S. 442 (1996), the Supreme Court rejected a due process challenge to a statute that allowed forfeiture of a car used in an illegal manner. Although the car at issue was jointly owned by a husband and wife and only the husband was implicated in the illegal use of the car, the court held that forfeiture of the car was constitutional in part because "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Id.* at 446. In *Towers v. City of Chicago*, the Seventh Circuit applied *Bennis* and allowed the City to impose fines and fees of over $500 on car owners whose cars were found to contain illegal drugs or firearms. *Towers*, 173 F.3d 619 (7th Cir. 1999). The court stated: "The plaintiffs had the sole authority to decide to whom their vehicles would be lent and to set the restrictions and checks that were appropriate to ensure that the vehicle would not be used to support illegal conduct." *Id.* at 627. Thus, substantive due process did not prevent the City from imposing the fine, even though there was no "innocent-owner defense" built into the legislative scheme. *Id.* at 626.

Plaintiffs argue that an Illinois case, *Town of Normal v. Seven Kegs*, 599 N.E.2d 1384 (Ill. App. Ct. 1992), applies to the instant case and that *Bennis* and *Towers* do not. In *Town of Normal*, the police seized beer kegs, tappers, and ice barrels, all of which were used in violation of local licensing laws. 599 N.E. 2d at 1385. A beer distributor, who had an interest in some of those items, sued to prevent forfeiture. *Id.* at 1386. The distributor had previously given the

13

seized items to a beer retailer, who had in turn given the items to consumers, who used the items illegally. *Id.* at 1389. The Illinois Appellate Court held that, because the beer distributor had only a tenuous relationship to the wrongdoers, the distributor could not be held liable. *Id.*

*Town of Normal* is inapposite to the case at bar. Nowhere in the complaint do plaintiffs suggest that they were unable to restrict or control the use of their cars; indeed, *Towers* explicitly recognized that car owners have "sole authority" to "set the restrictions and checks" on a car's use. *Towers*, 173 F.3d at 627. In contrast, the plaintiffs in *Town of Normal* lacked the ability to "establish[] safeguards to ensure the lawful use of their property," because between the plaintiffs and the wrongdoers was a third party—the beer retailers. *Town of Normal*, 599 N.E.2d at 1389. Further, *Town of Normal* relied heavily upon a Supreme Court case and various other federal cases that have been further explained by the federal courts in more recent years. *Id.* at 1388 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974) and collecting cases). The Supreme Court decided *Bennis* in 1996, four years after *Town of Normal* was decided. As noted above, *Bennis* provides authority for the constitutionality of Chapter 9-102's imposition of fines. *Bennis*, 516 U.S. at 446. The decision in *Towers* also post-dates the decision in *Town of Normal*, and *Towers* itself provides an adequate basis to uphold Chapter 9-102 against a substantive due process challenge. *See Towers*, 173 F.3d at 627.

Because ample case law supports the constitutionality of Chapter 9-102's imposition of liability on the owners, rather than the drivers, of cars that violate red light signals, plaintiffs have failed to state a substantive due process claim. Therefore, Count II and Count VII (insofar as it relies upon Count II) are dismissed.

### 3. Procedural Due Process

In Count V, plaintiffs allege that Chapter 9-102 violates Illinois procedural due process; Count VII restates this procedural due process claim under the United States Constitution. Although the other state and federal constitutional claims in this case could be evaluated by referring only to federal case law, Illinois courts have interpreted the Illinois Constitution to create broader procedural rights than those found in the United States Constitution. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (citing *People v. McCauley*, 645 N.E.2d 923, 930-39 (Ill. 1994) and *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314-19 (Ill. 1990)). In light of the differences between Illinois law and federal law, and in light of the Seventh Circuit's decision in *Van Harken* to allow the plaintiff in that case the opportunity to present Illinois due process arguments to an Illinois court, 103 F.3d at 1354, this court will analyze plaintiffs' federal procedural due process claim under federal case law and will refrain from deciding matters of state procedural due process in the context of the instant motions.

The Supreme Court teaches that due process is a flexible concept and only "calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (internal quotation marks omitted). The Seventh Circuit, in evaluating the constitutionality of the City's administrative scheme for adjudicating parking violations, has stated that "[t]he due process clause is not a straitjacket, preventing state governments from experimenting with more efficient methods of delivering governmental services." *Van Harken*, 103 F.3d at 1351. The Seventh Circuit has also stated that analysis of a due process claim requires balancing "the costs and benefits of whatever procedure the plaintiff contends is required." *Id*. More specifically, the Supreme Court requires

examination of three factors: the private interest at stake; the risk of error and the value of additional procedural safeguards; and finally, the government's interest and the burdens that additional procedural safeguards would place upon the government. *Mathews*, 424 U.S. at 335.

Plaintiffs make various procedural due process arguments. Plaintiffs argue that Chapter 9-102 allows the use of hearsay evidence (*i.e.*, the photographs captured by the automated cameras) against owners of vehicles at administrative hearings, allows the City to withhold exculpatory evidence at those hearings, and does not provide car owners the "opportunity to cross examine the creator, monitor and custodian of the images being used." Plaintiffs also claim that their inability to obtain a jury trial "constitutes a further procedural due process violation." Finally, plaintiffs argue that Chapter 9-102 allows the use of evidence that is, under Illinois statute, inadmissible in criminal proceedings.

Most of plaintiffs' due process arguments are answered directly by the Seventh Circuit's opinion in *Van Harken*, which the Seventh Circuit analyzed the City's administrative scheme for enforcing parking violations. 103 F.3d at 1350. That scheme treated a parking ticket like an affidavit, and used the ticket as evidence at an administrative hearing without requiring the appearance of the officer who issued the ticket. *Id.* The scheme did not allow the alleged parking violator to cross-examine the officer who issued the ticket, nor did it allow the violator to call witnesses. *Id.* The Seventh Circuit determined that the administrative scheme at issue satisfied due process because there was relatively little at stake (a maximum fine of $100), and the benefits of the truncated procedure outweighed its costs. *Id.* at 1351-52.

Chapter 9-102 incorporates the City's administrative scheme for parking violations, the same scheme challenged in *Van Harken*. *See* Traffic Code § 9-102-050 (incorporating Traffic

16

Code § 9-100-050 and §§ 9-100-070 through 9-100-090). Thus, plaintiffs' hearsay argument and their argument that Chapter 9-102 ought to allow cross-examination of traffic camera operators fails. Plaintiffs also claim that Chapter 9-102 allows the City to withhold "exculpatory evidence" because only "enforceable images" are revealed to red light violators—other images of the offending vehicle are not available. But in *Van Harken*, the City was not obligated to offer any evidence but the parking ticket—the hearing officer who adjudicated the parking tickets had discretion to subpoena witnesses and other evidence. *Van Harken*, 103 F.3d at 1350. Under Chapter 9-102, hearing officers have the same discretion. *See* Traffic Code § 9-100-080(d). The fact that Chapter 9-102 establishes liability through the use of photographs taken by automated cameras rather than tickets from absent police officers does not alter the constitutionality of the procedure available to alleged red light violators.[1]

Similarly, plaintiffs argument that car owners are entitled to a jury trail, which is not developed in plaintiffs' memorandum, is contrary to precedent. *Mathews* does not require a jury trial—indeed, it holds that the due process clause is flexible and allows for a range of procedural options. *Mathews*, 424 U.S. at 334. In *Van Harken*, the City's use of a hearing officer rather than a judge or jury, did not offend due process. 103 F.3d at 1351-52. Thus, a jury is not required under Chapter 9-102, where only a $90 fine is at issue, to determine a red light violator's liability.

---

[1] If anything, a photograph of the vehicle entering and exiting the intersection with a red light is more reliable than a parking ticket that does not include a photograph of the vehicle and the meter. Plaintiffs' argument that the ordinance is somehow defective because the City's contract with Redflex requires Redflex to submit only "Enforceable Images" (defined as those that clearly show the licence plate and the red light) is therefore without merit.

Plaintiffs' final argument is that the use of the photographs as evidence violates state law, and thus is a violation of federal procedural due process. However, it is settled that the violation of a state law, without more, does not amount to a violation of due process. *See Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 711 (7th Cir. 2004); *see also Pro-Eco, Inc. v. Board of Com'rs of Jay County*, 57 F.3d 505, 514 (7th Cir. 1995) ("Section 1983 affords relief only if the Constitution is offended, and a violation of a state procedural statute does not offend it."). Because photographs under Chapter 9-102 are used in a similar manner to standard parking citations examined in *Van Harken*, the use of the photographs do not violate procedural due process. 103 F.3d at 1251-52.

For the above reasons, Count VII's federal procedural due process claim is dismissed.

## CONCLUSION

For the above reasons, Counts II, III, IV, and VII are dismissed. The complaint's remaining Counts concern issues of purely state law, including whether the statutory scheme that authorizes Chapter 9-102 is sound. Because the jurisdiction of this court is based upon a federal question, and all of the federal claims are resolved by this order, the state law claims are dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *see Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001); *Van Harken*, 103 F.3d at 1354.

**ENTER:** **January 16, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**